UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JASON TILLMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No. 4:23 -CV-1432 HEA |
| | ) |
| EQUIFAX INFORMATION | ) |
| SERVICES, LLC, et al., | ) |
| | ) |
| Defendants. | ) |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on a motion to compel filed by Defendant Citibank, N.A. ("Citibank") seeking to compel Plaintiff Jason Tillman to arbitrate his claims. (ECF No. 30). For the reasons that follow, the Court grants Defendant's motion.

### I.   Background

Plaintiff brings this suit pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.,* ("FCRA"). Plaintiff alleges in his Amended Complaint that in 2009, when he was eight years old, his mother opened a Macys credit card account (the "Account") through Citibank, d/b/a Department Stores National Bank. According to an affidavit executed by Andrew Garyot, a Citibank employee, Plaintiff's mother added Plaintiff as an authorized user on the Account in January 2018, when he was fifteen years old. (ECF No. 31, Ex. 1 at 1). Plaintiff does not dispute this, however,

he avers in his own declaration that he did not request to be added to the Account, and he never received or used a credit card on the Account. (ECF No. 35, Ex. 1 at 1).

Plaintiff alleges he recently learned that he had a charge-off from the Account on his credit reports showing a balance of $3,474.00. He claims this balance was reported to Defendants Equifax Information Services, LLC ("Equifax") and Experian Information Solutions, Inc. ("Experian") as an amount owed, even though it did not belong to him and "he was the victim of identity theft." (ECF No. 19 at 2).

Plaintiff alleges that in the spring of 2022, he notified Defendants Equifax and Experian that they were reporting inaccurate and fraudulent credit card information on his credit report and requested a reinvestigation of the information. Plaintiff contends that Defendants Equifax and Experian communicated the dispute with Citibank. Experian and Equifax later informed Plaintiff that Citibank verified the Account information as accurate. Plaintiff continued to dispute that the information was accurate, and at some point in time, Experian removed the Account from Plaintiff's credit report. Equifax, however, continued to report it. Plaintiff alleges that he was denied credit as a result of Defendants' conduct, and he has suffered extreme mental anguish, emotional distress, humiliation, and damage to his reputation for credit worthiness.

In his Amended Complaint, Plaintiff brings four counts against the three defendants. He alleges Defendants Equifax and Experian failed to (1) comply with the reinvestigation requirements; (2) conduct a reasonable reinvestigation; and (3) follow reasonable procedures to assure the maximum possible accuracy of the information contained in Plaintiff's credit reports in violation of 15 U.S.C. § 1681o (Count I) and § 1681n (Count II). Plaintiff alleges Defendant Citibank failed to (1) follow reasonable procedures upon receipt of Plaintiff's fraud dispute from the defendant credit bureaus; and (2) conduct a reasonable investigation in violation of 15 U.S.C. § 1681o (Count III) and § 1681n (Count IV).

In response to the Amended Complaint, Equifax filed an answer. On December 8, 2023, Plaintiff and Experian filed a stipulation of dismissal as to Experian. Citibank filed a motion to compel arbitration, the motion presently before the Court.

In its motion, Citibank argues that the Account is controlled by a Card Agreement that contains an arbitration provision. Citibank filed with the Court a copy of the Credit Card Agreement, which provides in relevant part:

> THIS SECTION PROVIDES THAT DISPUTES MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, HAVE A JURY TRIAL OR INITIATE OR PARTICIPATE IN A CLASS ACTION. IN ARBITRATION, DISPUTES ARE RESOLVED BY AN ARBITRATOR, NOT A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN IN

COURT. THIS ARBITRATION PROVISION IS GOVERNED BY THE FEDERAL ARBITRATION ACT (FAA), AND SHALL BE INTERPRETED IN THE BROADEST WAY THE LAW WILL ALLOW.

Covered claims

• You or we may arbitrate any claim, dispute or controversy between you and us arising out of or related to your account, a previous related account or our relationship (called "Claims").

• If arbitration is chosen by any party, neither you nor we will have the right to litigate that Claim in court or have a jury trial on that Claim.

Except as stated below, all Claims are subject to arbitration, no matter what legal theory they're based on or what remedy (damages, or injunctive or declaratory relief) they seek, including Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; Claims made regarding past, present, or future conduct; and Claims made independently or with other claims. This also includes Claims made by or against anyone connected with us or you or claiming through us or you, or by someone making a claim through us or you, such as a co-applicant, authorized user, employee, agent, representative or an affiliated/parent/subsidiary company.

(ECF No. 31, Ex. 1 at 13-14).

Citibank argues the Credit Card Agreement is valid and enforceable. It contends that as an authorized user on the Account, Plaintiff must pursue his claims in arbitration pursuant to the arbitration provision found in the Credit Card Agreement.

## II.  *Legal Standard*

A motion to compel arbitration is properly analyzed under Fed. R. Civ. P. 12(b)(6), the motion to dismiss standard, or Fed. R. Civ. P. 56, the summary judgment standard. *City of Benkelman, Nebraska v. Baseline Eng'g Corp.*, 867 F.3d 875, 881 (8th Cir. 2017).  If a party presents evidence outside the pleadings, which is not excluded by the Court, the motion must be treated as one for summary judgment under Rule 56.  *Id.* at 882.  Here, both sides have submitted evidence in support of their positions, therefore, the Court will apply the summary judgment standard under Rule 56.  *Ballou v. Asset Mktg. Servs., LLC*, 46 F.4th 844, 851 (8th Cir. 2022).  Summary judgment is proper if, viewing the record in the light most favorable to the nonmovant, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to [relief] as a matter of law." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (*en banc*) (internal quotation marks omitted).  Defendant bears the burden to prove a valid arbitration agreement exists, as it is seeking to compel arbitration in this case.  *Id.*

## II. *Discussion*

The Federal Arbitration Act ("FAA") applies to contracts evidencing transactions "involving commerce." 9 U.S.C. § 2; *Hoffman v. Cargill Inc.*, 236 F.3d 458, 461 (8th Cir. 2001).  The FAA provides:

5

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The Supreme Court has interpreted this provision broadly as exercising the full scope of Congress's commerce-clause power. *Allied–Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273–77 (1995). The Court finds the statute applies to the arbitration agreement contained in the Credit Card Agreement.

Under the FAA:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4. The FAA reflects a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Conception*, 563 U.S. 333, 339 (2011). "[C]ourts must place arbitration agreements on an equal footing with other contracts" and enforce them according to their terms. *Id.* "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Lyster v. Ryan's Fam. Steak Houses, Inc.*, 239 F.3d 943,

6

945 (8th Cir. 2001). Therefore, when there is an enforceable agreement to arbitrate, federal courts "shall make an order directing the parties to proceed to arbitration." 9 U.S.C. § 4.

The Court's role under the FAA is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute." *Pro Tech Indus., Inc. v. URS Corp.*, 377 F.3d 868, 871 (8th Cir. 2004). *See also Foster v. Walmart, Inc.*, 15 F.4th 860, 862 (8th Cir. 2021). The parties do not dispute that Plaintiff's claims would fall under the scope of the arbitration agreement. At issue here is whether a valid agreement exists between Citibank and Plaintiff.

Agreements to arbitrate are "'a matter of contract,' meaning that disputes are arbitrable only to the extent an agreement between the parties says so." *Foster*, 15 F.4th at 862 (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)). Because arbitration agreements are a matter of contract, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (*quoting Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)) (internal marks omitted). In determining whether the parties agreed to arbitrate, the Court applies "state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

7

Citibank argues South Dakota law applies, and Plaintiff does not dispute this. Under South Dakota law, the "[e]lements essential to existence of a contract are: (1) Parties capable of contracting; (2) Their consent; (3) A lawful object; and (4) Sufficient cause or consideration." S.D. Codified Laws § 53-1-2. *See also Geraets v. Halter*, 588 N.W.2d 231, 234 (S.D. 1999). "To form a contract, there must be a meeting of the minds or mutual assent on all essential terms." *Jacobson v. Gulbransen*, 623 N.W.2d 84, 90 (S.D. 2001) (citation omitted).

Plaintiff does not dispute that he was added as an authorized user on the Account or that the Credit Card Agreement contains an arbitration provision that binds authorized users. Rather, he argues that his claims are not subject to arbitration because he never consented to the Credit Card Agreement. Further, he points to the fact that he was a minor when his mother executed the Credit Card Agreement and when she added him as an authorized user. He also argues that he did not ratify the Credit Card Agreement because he never received or used the card.

With limited exceptions, minors are not capable of contracting under South Dakota law. S.D. Codified Laws § 53-2-1 ("[a]ll persons are capable of contracting except minors, persons of unsound mind, and persons deprived of civil rights"); § 53-2-2 ("[m]inors and persons of unsound mind have only [the] capacity [to contract] as is specified in the statutes relating to such persons"). Plaintiff was a minor when he was added as an authorized user on the Account, but he did not

8

consent to be part of the Credit Card Agreement on his own. Rather, Plaintiff's mother executed an agreement with Citibank on his behalf when she added him as an authorized user on the Account. Under South Dakota law, a parent may execute a contract with a bank in the name of a minor child. S.D. Codified Laws § 26-2-1. A parent "may sign the minor's name for and on behalf of the minor, for the purposes of establishing an account, and such subscription shall constitute a binding agreement between the financial institution, and the named parties to the account." *Id.* As Plaintiff does not dispute that his mother added him as an authorized user on the Account when he was a minor, the Court finds there is a binding agreement between Plaintiff and Citibank. The cases Plaintiff cite involving forgery and identity theft are inapposite to the facts here. The undisputed evidence establishes that a valid arbitration agreement exists, and Plaintiff is bound by its terms. The Court further finds that as an authorized user under the Credit Card Agreement, Plaintiff's claims against Citibank fall within the scope of the arbitration provision. Citibank's motion to compel arbitration is granted.

The FAA requires a federal district court to stay an action pending an arbitration, rather than to dismiss it. 9 U.S.C. § 3; *Smith v. Spizzirri*, 601 U.S. 472, 475 (2024); *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769 (8th Cir. 2011). Therefore, the Court will stay these proceedings as to Plaintiff's claims against Citibank pending the outcome of arbitration.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Citibank, N.A.'s Motion to Compel Arbitration is **GRANTED.**  This proceeding is **STAYED** pending arbitration <u>**as to Plaintiff Jason Tillman's claims against Defendant Citibank, N.A. only**</u>.  [ECF No. 30].

**IT IS FURTHER ORDERED** that the parties provide a status report regarding the arbitration process within 90 days of the date of this order.

Dated this <u>2nd</u> day of August, 2024.

_____
**HENRY EDWARD AUTREY**
**UNITED STATES DISTRICT JUDGE**